UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-23568-CIV-ALTONAGA/Simonton

**WI-LAN USA, INC.**, and
**WI-LAN, INC.**,

       Plaintiffs,
v.

**ALCATEL-LUCENT USA INC.**,

       Defendant.
_____/

## **ORDER**

**THIS CAUSE** came before the Court on Defendant, Alcatel-Lucent USA Inc.'s ("Alcatel['s]") Motion to Transfer Pursuant to 28 U.S.C. Section 1404(a) ("Motion") [ECF No. 34], filed December 18, 2012. The Motion requests this action be transferred pursuant to section 1404(a) from this Court to the United States District Court for the District of New Jersey. The Court has carefully reviewed the parties' written submissions and applicable law.

### **I. BACKGROUND**

On October 1, 2012, Plaintiffs, Wi-Lan USA, Inc. ("Wi-Lan USA") and Wi-Lan, Inc. ("Wi-Lan"), filed their Complaint [ECF No. 1] for patent infringement against Alcatel. Wi-Lan USA is a Florida corporation with its principal place of business in Miami, Florida. (*See id.* ¶ 1). Wi-Lan is a Canadian corporation with its principal place of business in Canada. (*See id.*). Wi-Lan USA is a wholly owned subsidiary of Wi-Lan. (*See id.*).

Plaintiffs allege Alcatel, a Delaware corporation with its principal place of business in New Jersey (*see id.* ¶ 2), maintains offices in this judicial district (*see id.* ¶¶ 7–18), and that it has

committed acts of patent infringement in this district (*see id.* ¶ 19). Specifically, Alcatel makes, uses, offers for sale, imports and sells products compliant with the "3GPP LTE standard," including but not limited to the "9100 Multi-Standard Base Station and 9926 Distributed Base Station" (collectively "the accused Alcatel products"). (*Id.* ¶ 21). The accused Alcatel products support at least "Release 8" of the 3GPP LTE standard. (*See id.* ¶ 22).

Count I of the Complaint alleges infringement of Wi-Lan's U.S. Patent No. 8,027,298 (the "'298 Patent"), entitled "Methods and Systems for Transmission of Multiple Modulated Signals over Wireless Networks." (*Id.* ¶ 24). Wi-Lan USA "holds certain rights" under the '298 Patent. (*Id.*). Plaintiffs allege Alcatel is infringing this patent in this judicial district and elsewhere by making, using, offering for sale, importing, and selling without authority from Wi-Lan the Alcatel products, which fall within the scope of one or more claims of the '298 Patent. (*See id.* ¶ 25). Count II alleges the same claim, except as to Patent No. 8,249,014 (the "'014" Patent"); and Count III makes the same claim as to Patent No. 8,229,437 (the "'437 Patent") (all three patents are referred to as the "patents-in-suit"). (*See id.* 5-6).

The patents-in-suit relate to base stations that practice the Long Term Evolution ("LTE" or "4G") standard for cellular telephony. (*See* Mem. in Opp'n ("Opp'n") 2 [ECF No. 42]). Base stations allow cellphones and modems to communicate with a carrier's network. (*See id.*). The patents-in-suit allow the base stations to more efficiently allocate bandwidth among the devices. (*See id.*). In their proposed First Amended Complaint [ECF No. 47-1], Plaintiffs add allegations that Alcatel's infringement is willful and deliberate. (*See generally* Am. Compl.).

On November 15, 2012, Alcatel filed its Answer and Counterclaims [ECF No. 17], raising as an issue the inconvenience of this forum for adjudication of the parties' dispute. (*See id.* ¶ 6). Nevertheless, Alcatel filed a six-count Counterclaim seeking declaratory judgments of

non-infringement and invalidity as to the patents-in-suit. As stated, Alcatel filed this Motion on December 18, 2012, seeking transfer of the case to New Jersey.

## II. LEGAL STANDARD

Federal law provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money." *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1188–89 (S.D. Fla. 2007) (citations omitted). Courts have broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *accord Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002).

Once a court finds an action could have been brought in the transferee forum, the court "must weigh various factors . . . to determine if a transfer . . . is justified. *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985). Courts should consider at least the following private and public interest factors to determine whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted); *see also Meterlogic*, 185 F. Supp. 2d at 1300; *accord Moghaddam v. Dunkin Donuts, Inc.*, No. 02-60045-Civ-Zloch, 2002 WL 1940724, at *2 (S.D. Fla. Aug. 13, 2002).

It is the movant's burden to establish transfer is warranted. *See Cent. Money Mortg. Co. v. Holman*, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. 2000). This burden is high: a plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (internal quotation marks and citation omitted); *accord Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001) ("Transfer can only be granted where the balance of convenience of the parties *strongly favors* the defendant." (emphasis in original) (citations omitted)). However, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Windmere Corp.*, 617 F. Supp. at 10.

### III. ANALYSIS

Alcatel asserts this action could have been brought in New Jersey and the balance of convenience highly favors transfer to New Jersey. According to Alcatel, it employs more than 3,200 employees in New Jersey; the accused products (base stations used in 4G cellular networks) were designed, developed, and tested in New Jersey or France (where its corporate parent is located); marketing and financial decisions occur primarily in New Jersey; all the relevant domestic witnesses are in New Jersey or in Europe; no research, testing, marketing or sales of the accused products take place in this District; none of the accused products can be found in this District; no witnesses reside in Florida; and Plaintiffs themselves have a tenuous connection to Florida inasmuch as Wi-Lan is a Canadian company and Wi-Lan USA was created

4

solely as a vehicle for Wi-Lan to file suits in this District over the last several months. (*See* Mot. 1–2). In their Opposition, Plaintiffs insist all Alcatel has shown is that suit in New Jersey is more convenient for its own employees, and a party's own convenience is insufficient to warrant transfer; most of the non-party witnesses are located on the West Coast; and the time it takes for a case to get to trial in New Jersey is 2.5 times longer than it is in this District. (*See* Opp'n 2). The Court balances Alcatel's and Plaintiffs assertions to determine whether transfer is appropriate.

A.   **The Action Might Have Been Brought in New Jersey**

An action might have been brought in a transferee district if that district has subject matter jurisdiction over the action, personal jurisdiction over the defendant, and venue is proper in the transferee district. *See Windmere Corp.*, 617 F. Supp. at 10; 15 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3845, at 47–51 (3d ed. 2007). While Plaintiffs acknowledge this is the preliminary question Alcatel must satisfy (*see* Opp'n 6), they fail to address it at all. The Court must conclude, therefore, as Alcatel argues, that because this is a patent-infringement action, the District of New Jersey has subject matter jurisdiction under 28 U.S.C. sections 1331 and 1338. (*See* Mot. 6). And because Alcatel's principal place of business is in New Jersey, venue is proper. (*See id.*). Finally, Alcatel is amenable to process issuing out of New Jersey. (*See id.*). This preliminary inquiry being satisfied, the Court turns to an examination of the remaining factors.

B.   **The Convenience of the Parties and Witnesses**

The convenience of the party and non-party witnesses is an important factor in the analysis whether to grant a motion to transfer. *See Gonzalez v. Pirelli Tire, LLC*, No. 07-80453-CIV, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008). Alcatel asserts New Jersey is a more

convenient forum than the Southern District of Florida because numerous Alcatel employees responsible for the design, development, and testing of the accused products are in New Jersey, including many witnesses with information relevant to Wi-Lan's infringement claims. (*See* Gelsi Decl. ¶ 5 [ECF No. 34-28]). The Alcatel marketing and financial operations are located in New Jersey, and the witnesses in these areas, too, will possibly provide testimony on the design, development, and testing of the accused products. Alcatel identifies its principal customer, Verizon Wireless ("Verizon"), as a "potential third-party witness," relevant in addressing Wi-Lan's proposed new claims for indirect infringement to which Alcatel objects,[1] and states Verizon is based in New Jersey. (Mot. 11; *see also* Reply 4 [ECF No. 55]). Five of the eight named inventors of the patents-in-suit reside and/or work in California, and one may be based in Massachusetts. (*See* Mot. Exs. 7–13 [ECF Nos. 8–14]). One of the two firms that prosecuted the patents-in-suit is in Philadelphia, Pennsylvania, with an officer in Princeton, New Jersey, and another is based in Southern California. (*See* Mot. Exs. 13–14 [ECF Nos. 14–15]). Alcatel asserts it is unaware of any witnesses located in Florida. (*See* Mot. 11). Furthermore, Alcatel considers it more convenient for Wi-Lan's Canadian witness-employees to travel to New Jersey than to make the longer trip to South Florida. (*See id.*). The only Wi-Lan USA employee Alcatel is aware of is Matthew Pasulka, the vice-president of litigation of Wi-Lan, but Mr. Pasulka, who resides in Minnesota, merely manages the companies' patent litigation. (*See id.* 11–12).

Plaintiffs emphasize that in their initial disclosures, the parties did not identify any third-party witnesses located in New Jersey. (*See* Opp'n 5). The parties instead identified the inventors of the patents-in-suit and the attorneys who prosecuted the patents-in-suit as the key

---

[1] Alcatel intends to file a memorandum in opposition to Plaintiffs' Motion to Amend Complaint [ECF No. 47].

non-party witnesses, and among the eight inventors, five are in California, one is in Massachusetts, one is in Israel, and one is either in California or India. (*See id.* 5–6). Two of the attorneys who prosecuted the patents-in-suit are in California, and one is in Pennsylvania. (*See id.* 6). With regard to Verizon witnesses, Alcatel did not disclose them in the parties' initial disclosures, Alcatel does not disclose what information they may have on any of the issues in the case, and Verizon has offices throughout the United States, including in Florida. (*See id.* 10). The most important third-party witnesses are the inventors and the attorneys, and of the 12, only two are located in a state close to New Jersey — Philadelphia. (*See id.* 11).

Plaintiffs also acknowledge, however, that Wi-Lan USA's presence in Florida is recent and by design. Wi-Lan USA chose to locate in Florida because of its favorable laws and economic conditions, including access to efficient federal courts familiar with patent cases. (*See id.* 8). Wi-Lan USA identifies no Florida employees whose presence will be required in discovery or at trial.

Having presented no witnesses who will be assisted by a transfer of this action to New Jersey, and having provided vague references to the New Jersey party-witnesses who may have relevant information,[2] on balance, these initial factors do not favor transfer.

C.      **The Location of Relevant Documents and the Ease of Access to Proof**

Alcatel argues that because "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotations marks and citation omitted)), and all of the relevant documentary evidence is located in Alcatel's headquarters in New Jersey, with none present in

---

[2] Alcatel asserts several named engineers were "involved" in the design of Alcatel base stations (without specific reference to the accused products), and that a William Zucker was "involved in overseeing the design and development of the accused products" (Mot. 5), without further explaining what relevant testimony these individuals would provide.

7

the Southern District of Florida, this factor supports transfer. (*See* Mot. 12–13). However, as Plaintiffs recognize, in this age of electronic discovery, it is no more burdensome for Alcatel to produce its documents in Florida than it is for it to produce them in New Jersey. (*See* Opp'n 12). The Court has previously found, and repeats here, that "[p]roducing documents and other files for litigation . . . is not usually a burdensome ordeal due to technological advancements, such as electronic document-imaging and retrieval." *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc.*, No. 10-20715-Civ, 2010 WL 3056600, at *5 (S.D. Fla. Aug. 4, 2010) (citation omitted). Consequently, this factor does not support transfer.

D.     **The Locus of Operative Facts**

The Court must agree with Alcatel that the locus of operative facts is in the District of New Jersey and not here. Tellingly, Plaintiffs do not address this factor at all. The alleged infringement has no connection to this District; no accused products can be found here; Alcatel has not sold the accused products to customers in Florida; and Alcatel has not performed any research, development, manufacturing, distribution, or testing related to the accused products in this District. (*See* Mot. 13). "[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration. . . . Several district courts have held that the 'center of gravity' for a patent infringement case is [the place] where the accused product was designed and developed." *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011) (internal quotation marks, citations, and footnote call number omitted). This factor favors transfer to New Jersey.

E.    **The Availability of Process to Compel Unwilling Witnesses**

In light of the minimal number of witnesses who have any connection to New Jersey or to Florida, as previously discussed, the availability of process to compel the attendance of unwilling witnesses does not favor transfer.

F.    **The Relative Means of the Parties**

Alcatel acknowledges that "[t]he parties' relative means are irrelevant because it will be costly and inefficient for both parties to litigate this case in the Southern District of Florida." (Mot. 14). Plaintiffs do not directly dispute this characterization, and indeed concede this factor is neutral. (*See* Opp'n 15).

G.    **The Forum's Familiarity With the Governing Law**

The parties also appear to agree that this factor is neutral. (*See* Mot. 17; Opp'n 15).

H.    **Weight Accorded a Plaintiff's Choice of Forum**

"[A] plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson*, 74 F.3d at 260. However, "where the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff, the choice of forum is entitled to 'less consideration.'" *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-Civ, 2009 WL 455432, at *2 (S.D. Fla. Feb. 23, 2009) (citations omitted). Furthermore, where a patentee attempts to influence venue by establishing "recent" and "ephemeral" connections to a district, the choice of forum is also entitled to less consideration. *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (citation omitted).

Wi-Lan USA incorporated in Florida in December 2011, and "has made a commitment to Florida by leasing office space, seeking to hire employees and conducting corporate business in this District." (Opp'n 7; *see also* Vladescu Decl. *passim* [ECF No. 42-1])). While Wi-Lan USA

has only recently begun "actively recruiting" employees, it is presently involved in nine other litigations pending in this District. (*See* Vladescu Decl. ¶ 7). As Wi-Lan USA admits, it chose this District because of the highly skilled labor pool in the technology and legal professions, as well as because the federal district courts here participate in the federal patent pilot program and offer an expedited docket as compared to other districts, thereby reducing Wi-Lan's business expenses. (*See id.* ¶ 8).

According to Alcatel: (1) Wi-Lan USA filed its first of a series of lawsuits a few weeks after incorporating; (2) although it was incorporated over a year ago it can point to not a single employee; and (3) it has signed a one-year lease extension terminable without penalty after six months. (*See* Mot. 9; Reply 2). On this showing, the Court must agree with Alcatel that Wi-Lan USA "appears to have been created solely for the purpose of filing cases in the Southern District of Florida." (Mot. 9). Consequently, Wi-Lan USA's Florida existence provides less than persuasive reason to deny transfer to New Jersey, where the alleged infringing activity has taken place. *See, e.g., Compression Tech. Solutions LLC v. EMC Corp.*, No. 4:11cv1579 TCM, 2012 WL 1188576, at *8 (E.D. Mo. Apr. 6, 2012) (granting motion to transfer and citing cases where plaintiff's recent incorporation in forum without any other meaningful activity negated deference generally given a plaintiff's choice); *Shared Memory Graphics LLC v. Apple Inc.*, No. 5:09CV5128 BSM, 2010 WL 5151612, at *3 (W.D. Ark., May 27, 2010) ("Although [plaintiff] is incorporated in Arkansas, it had no role in the development of the patents involved . . . . Further, the record does not indicate that [plaintiff] has any relevant employees or documents in the Western District of Arkansas." (citation omitted)).

I.      **Trial Efficiency and Interests of Justice Based on the Totality of the Circumstances**

Alcatel provides statistics showing that while the average time it takes for a patent case to reach trial in this District is shorter than it is in the transferor district, the average time for a case to reach its conclusion is nearly identical in both. (*See* Mot. 16; Reply 7). Plaintiffs dispute the accuracy of Alcatel's numbers, insisting that this District is far more efficient, providing the speedier forum for resolution of the parties' dispute. (*See* Opp'n 13–14). Plaintiffs supply a declaration that relies on the 2011 Report on Judicial Business of the U.S. Courts that shows the median time to trial in this District is 17.2 months, as compared to 44 months in the transferor district. (*See id.* 13; Patmore Decl. [ECF No. 42-5]; Patmore Decl. Ex. 3 [ECF No. 42-8]). On balance, this factor favors retention of the suit.

## IV.  CONCLUSION

The Court now balances all of these factors. The Court agrees with Plaintiffs that the private interest factors pertaining to witness convenience, location of records, and availability of compulsory process do not favor transfer to New Jersey. Similarly, the public interest factor of trial efficiency points to retention of the case in this District. The Court also agrees that some of the factors considered — such as the parties' relative means and the forum's familiarity with governing law — are neutral, militating neither in favor of nor against transfer. On this side of the scale, Alcatel has failed to persuade. Nevertheless, the Court finds compelling that Plaintiffs' presence in this District is recent and ephemeral, deserving of less consideration than a domestic plaintiff would normally be entitled to. It is also significant that the operative facts underlying the causes of action did not occur in this District, and courts routinely transfer patent cases to the district where the infringing acts are alleged to have taken place. This places two of the factors in Alcatel's favor. On this record, the Court concludes that Alcatel has not carried its high

burden of showing that the balance of convenience strongly favors a transfer. *See Cent. Money Mortg. Co.*, 122 F. Supp. 2d at 1346; *Mason*, 146 F. Supp. 2d at 1359.

Being fully advised, it is

**ORDERED AND ADJUDGED** that the Motion to Transfer Pursuant to 28 U.S.C. section 1404(a) **[ECF No. 34]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 28th day of January, 2013.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc: counsel of record